FILED
MAR 16 2011

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TIMOTHY BREEDLOVE,

Plaintiff,

v.

COMMISSIONER of Social Security,

Defendant.

Case No. 07-CV-1743-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

Before the court is Plaintiff's Motion for Approval of Attorneys Fees Pursuant to 42 U.S.C. § 406(b), which is unopposed. The motion requires this court to apply the still-evolving standard for awarding attorney fees in Social Security cases under § 406(b). Based on the factors established by *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), and explained in *Crawford v. Astrue*, 586 F.3d 1142

(9th Cir. 2009) (en banc), the motion should be granted in part and fees awarded in the amount of $16,520.00.

*Background*

A. The Disability Case.

Breedlove applied for disability benefits on October 5, 2003, alleging disability since December 26, 2001, due to severe chronic back pain resulting in severe depression and anxiety, as well as high blood pressure, insomnia, and muscle spasms. (Tr. 85-94.) The Commissioner denied Breedlove's application initially and upon reconsideration. (Tr. 53-65.) After a hearing held on November 18, 2005, Administrative Law Judge ("ALJ") Jean Kingrey issued a decision on May 23, 2006, in which she found Breedlove not disabled and not entirely credible. (Tr. 19-27.) ALJ Kingrey concluded that Breedlove suffered from the severe impairments of "narcotic habituation without organic basis for pain or need for medications and mild degenerative disc disease not adequate to explain pain complaints" but that Breedlove's alleged mental impairments did not meet the requirements of the applicable impairment listings and did not markedly limit him in any category. (Tr. 22.) The ALJ found that Breedlove retained the residual functional capacity for light work but must avoid working around heights or in hazardous work settings, was limited to minimal contact with the public, and could only follow one-to-three step instructions. (Tr. 23.) Based on these limitations and considering Breedlove's age, training, and transferable skills, ALJ Kingrey determined that Breedlove retained the ability to work as a routing clerk, receiving checker, and table worker. (Tr. 26.) On October 17, 2007, the Appeals Council denied Breedlove's request for review which made ALJ Kingrey's decision the Commissioner's final decision. (Tr. 8-10.) Breedlove appealed the decision to this court on November 23, 2007.

In the brief filed in support of his appeal on July 28, 2008, Breedlove argued that ALJ Kingrey erred in failing to find that Breedlove's depression and anxiety constituted severe impairments or to comply with Social Security Ruling 85-15 relating to the stress in the workplace, improperly rejecting the opinions of Breedlove's treating and examining physicians, and failing to appropriately address the testimony of Breedlove and his wife. Specifically, Breedlove argued that ALJ Kingrey failed to give specific and legitimate reasons for rejecting Dr. Cole's opinions regarding Breedlove's moderate functional limitations caused by his depression and anxiety as supported by the diagnosis and resulting limitations noted by Dr. Cole. Similarly, Breedlove argued that ALJ Kingrey neglected to provide the requisite explanation for rejecting the opinion of Dr. Glidden that Breedlove was incapable of even sedentary work. Instead, ALJ Kingrey relied solely on the lack of objective findings supporting Dr. Glidden's opinion despite the existence of objective evidence of degenerative disc disease in the records of examining physicians Maraire, Herr, and Wenner. Breedlove relied on these same objective findings in arguing that ALJ Kingrey improperly rejected his symptom testimony. Finally, Breedlove asserted that the ALJ failed to identify any specific evidence controverting the testimony offered by Mrs. Breedlove about her husband's daily activities and limitations.

In response, the Commissioner filed a stipulation to remand the action for further administrative proceedings. The stipulation provided that, on remand, a new ALJ would conduct a *de novo* hearing to further develop the extent and effect of Breedlove's limitations. Specifically, the new ALJ would reevaluate all medical evidence, paying particular attention to the opinion of Dr. Glidden, and would consider the testimony of Breedlove's wife in accordance with Social Security Ruling 06-03p. On September 23, 2008, this court entered a judgment remanding the action for

further proceedings in accordance with the stipulation. On remand, the Commissioner found that Breedlove was disabled.

B. The Fee Request.

On December 23, 2008, Breedlove's attorney submitted an application for Equal Access to Justice Award ("EAJA") attorney fees in the amount of $4,050.00 pursuant to 28 U.S.C. § 2412. At that time, Breedlove's attorney represented that attorneys had expended not less than 23.60 hours in connection with this matter and that the EAJA hourly rates for 2007 and 2008, adjusted for inflation, were $166.46 and $173.22, respectively. The Commissioner did not object to the requested attorney fees and expenses and on January 16, 2009, this court issued an Order awarding EAJA attorney fees in the full amount requested, $4,050.00.

On June 17, 2010, Breedlove's attorney filed his unopposed motion for attorney fees under 42 U.S.C. § 406(b),[1] seeking $24,587.50 for the work performed in this case before this court.[2] Attached to the memorandum in support of the motion is a copy of the contingent fee agreement entered into between Breedlove and his attorney in which Breedlove agreed that attorney fees for representation before the court be the greater of: "1) 25 (twenty-five) percent of the past-due benefits resulting from my claim or claims (which I understand may exceed $700.00 per hour), [or] 2) Such

---

[1] In attorney fee motions under § 406(b), the real party in interest is the attorney, not the claimant. *Gisbrecht*, 535 U.S. at 798 n.6.

[2] In Social Security cases, attorney fees may be awarded under both the EAJA and § 406(b), but "an EAJA award offsets an award under Section 406(b)." *Gisbrecht*, 535 U.S. at 796. Congress enacted the EAJA in 1980 to permit recovery of attorney fees in those cases where "the Government's position in the litigation was not 'substantially justified.'" *Gisbrecht*, 535 U.S. at 796, citing 28 U.S.C. § 2412(d)(1)(A). EAJA fees are determined by the time spent and the attorney's hourly rate, which rate is statutorily capped $125.00. *Gisbrecht*, 535 U.S. at 796, citing 28 U.S.C. § 2412(d)(2)(A).

amount as my attorneys are able to obtain pursuant to the Equal Access to the Justice Act" (the "Fee Agreement"). Breedlove signed the Fee Agreement on November 11, 2007. Breedlove's counsel represents that the $24,587.50 he seeks is about 23.79 percent of his client's past-due benefits to be awarded and that the reduction from the twenty-five percent specified in the Fee Agreement is "intended to ensure that the claimant does not pay more than 25 % of his retroactive benefits to all the attorneys involved in pursuing his case at all levels." (Mem. in Supp. of Pl.'s Mot. for Att'ys Fees ("Memo.") at 1.)

Breedlove's attorney points to the existence of a contingent fee contract and notes that the Supreme Court in *Gisbrecht* held that "deference should be given to the terms of the contingent fee contract." (Memo. at 2.) Counsel then identifies several factors which he believes supports a finding that the amount he is requesting should not be reduced. First, he identifies a substantial risk of non-payment and a significant delay in payment, both of which pertain to the general risk of representing Social Security claimants. He asserts that these risks were unusually high in this instance in that the case involved a younger claimant (under age 50) who was alleging "excess pain" and other subjective symptoms. (Memo. at 3.) He notes that the matter was remanded to the Office of Disability Adjudication and Review, which is known for long delays and repeated adverse decisions by the ALJ. He then asserts that assessment of risk in individual cases is "fraught with pitfalls" and "should be given very little weight in the fee determination process." (Memo. at 3 n. 4.)

Breedlove's attorney fee request represents an hourly rate of $1,041.84. He attempts to support this request by establishing that it is a reasonable hourly rate for the work he performed. Rather than begin with his normal hourly rate for non-contingent cases, however, counsel instead refers to the *Oregon State Bar 2007 Economic Survey* ("Survey"), used by the judges in this district

as the initial benchmark for determining reasonable hourly rates applicable to attorney fee awards. *See* "Message From The Court Regarding Attorney Fee Petitions," available at www.ord.uscourts.gov/attorney_fee_statement. The Survey reports that the average billing rate for all attorneys in private practice in Portland is $244.00 per hour. *Oregon State Bar 2007 Economic Survey* at 27.

Then, to account for the identified risk factors, Breedlove's counsel employs several multipliers to this average billing rate. First, he addresses the risk of not getting paid at all and starts his analysis with the *Oregon State Bar 1998 Economic Survey's* statistic that "Portland attorneys spend 15% of their time on contingency matters, but derive 17% of their income from such matters." He contends that this statistic requires use of a multiplier of 17/15 here. (Memo. at 4-5.) He states that because there is only a 33.52% chance of winning benefits for a claimant, a "contingency multiplier" of 2.98 (100/33.52) also should be applied to the $244.00 average hourly rate. Applying both multipliers, counsel calculates the effective hourly rate for Portland attorneys practicing Social Security law in order to "properly compensate" them for the contingency risk of these cases to be $824.07 per hour ($244.00 x 2.98 x 17/15). (Memo. at 5.) Counsel then acknowledges that the hourly fee requested in this case – $1,041.84 – is higher that they $824.07 hourly rate warranted in contingent fee cases, and attempts to justify the increased hourly rate in this case by noting that because fee awards in Social Security cases are significantly less than $824.07 per hour in most cases, the award in some cases must be higher than $824.07 to reach the $824.07 average hour rate.

*Legal Standard*

Attorney fee awards for Social Security cases are governed by 42 U.S.C. § 406(b), which provides in relevant part:

> (b) Attorney fees
>
> (1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, *the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled* by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(I) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

(emphasis added.)

Two cases control application of the § 406(b) standard. In *Gisbrecht v. Barnhart*, the Supreme Court undertook to clarify the statutory "reasonable fee" standard by taking on the question of the "appropriate starting point" for judicial determinations of fee requests. The Court directed lower courts to approach § 406(b) fee determinations by looking first to the contingent-fee agreement and then "testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808. In support of a fee request under § 406(b), the claimant's attorney "must show that the fee sought is reasonable for the services rendered." *Gisbrecht*, 535 U.S. at 807. Important on this point is that a twenty-five percent contingent-fee award is not automatic or even presumed; "the statute does not create any presumption in favor of the agreed upon amount." *Id.* at 807 n.17. *Accord Dunnigan v. Commissioner*, No. 07-1645-AC, 2009 WL 6067058, at *7 (D. Or. Dec. 23, 2009), *cited with approval, Carlson v. Commissioner*, No. 08-1202-ST, 2010 WL 2813427, at *1 (D. Or. July 15, 2010). Second, the court is to review contingent-fee arrangements "as an independent check, to assure that they yield reasonable results in particular cases." *Id.* at 807. The statute requires "an affirmative judicial finding that the fee allowed is 'reasonable'[.]" *Id.* at 807 n.17 (citation omitted). The Court then identified four factors lower courts should use to determine whether a reduction from

the contingent-fee amount is appropriate:

> 1. the character of the representation, specifically, whether the representation was substandard;
>
> 2. the results the representative achieved;
>
> 3. any delay attributable to the attorney seeking the fee; and
>
> 4. whether the benefits obtained were "not in proportion to the time spent on the case" so that the attorney does not receive a "windfall".

*Gisbrecht*, 535 U.S. at 808. To assess the last factor, the district court may request or examine the requesting attorney's record of hours spent and a statement of the attorney's normal hourly rate as an aid in assessing the reasonableness of the fee." *Id.*

In *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en banc), the Ninth Circuit added its construction of *Gisbrecht* and § 406(b). There, the Ninth Circuit reversed § 406(b) fee awards in three cases because the district courts had premised their fee analysis on the lodestar method rather than on the attorney-client fee agreements in violation of *Gisbrecht's* mandate. *Id.* at 1150. Reiterating *Gisbrecht's* directive, the Ninth Circuit stated that the courts must assure the reasonableness of Social Security case fee awards by beginning with the fee agreement and then determining whether that amount should be reduced, not deciding, as the district courts had done, "whether the lodestar amount should be enhanced." *Id.* at 1149. The Ninth Circuit then added a risk factor to the *Gisbrecht* test by directing district courts to "look at the complexity and risk involved in the specific case at issue to determine how much risk the firm assumed in taking the case." *Id.* at 1153. Finally, the Ninth Circuit noted that although the district courts have discretion to determine a reasonable fee under § 406(b), they must provide an explanation of the reasons for a fee award, specifically, how the award relates to the circumstances of the particular case. *Id.*

*Discussion*

*Gisbrecht* and *Crawford* make clear that the § 406(b) analysis always begins with the contingent-fee agreement, and then proceeds with an evaluation of the agreement's reasonableness and an assessment of whether any reduction is appropriate by applying the factors identified in *Gisbrecht* and *Crawford* to the circumstances of the specific case.[3] With this general guidance, the court turns to the specific fee request here.

A. The Fee Agreement.

The first step in the *Gisbrecht* analysis is to look to the contingency agreement and determine whether it is within the twenty-five percent statutory boundary. A contingent-fee agreement exists between Breedlove and his attorney, by which they agreed the attorney fee for work in federal court would be the greater of the EAJA fee or twenty-five percent of any past-due benefits received. The terms of the contingency-fee agreement are within the statutory limits.

The next step is to confirm that the fee sought does not exceed § 406(b)'s twenty-five percent ceiling, which determination requires evidence of total past-due benefits to be paid. Here, Breedlove's attorney represents the $24,587.50 he is seeking as attorney fees is about 23.79 percent of the retroactive benefits or, more specifically, $1,250 less than the twenty-five percent specified in the fee agreement. Breedlove's attorney also provides a copy of a letter from the Social Security Administration indicating that the sum of $20,537.50 represents the balance of twenty-five percent of the past-due benefits owed to Breedlove and an email to Breedlove's attorney indicating that

[3] The court emphasized focusing the § 406(b) analysis on the particular case: '"Rather . . . a court's primary focus should be on the reasonableness of the contingency agreement in the context of the particular case."' *Crawford*, 586 F.3d at 1148 n.7 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)).

attorney fees in the amount of $5,300 had already been paid for services rendered to Breedlove. The sum of Breedlove's requested fee and the $1,250 reduction amount less the $5,300 already paid equals $20,537.50, the amount withheld by the Commissioner as the "balance" of the twenty-five percent of Breedlove's past-due benefits. Based on this evidence, it appears that Breedlove retroactive benefits equaled $103,350. Accordingly, it is clear that the fee amount sought is slightly less than the twenty-five percent of the past-due benefits to which Breedlove was entitled.

B. The Reasonableness of the Fee Sought.

Having determined that the contingent-fee percentage specified in the agreement is within the statutorily mandated ceiling and that the fee sought does not exceed that ceiling, the court turns to its primary inquiry, the reasonableness of the fee sought. Breedlove's attorney seeks $24,587.50 for work in this case before this court. Applying the *Gisbrecht* factors, as interpreted by *Crawford*, the court finds that Breedlove's attorney has not demonstrated that this fee, which represents almost the entire twenty-five percent fee authorized by the statute, is reasonable on the record of this case.

1. The requesting attorney's burden.

*Gisbrecht* established that the attorney seeking a § 406(b) fee must demonstrate the reasonableness of the fee sought, but the briefing Breedlove's attorney filed in support of his fee request does not specifically address each of the *Gisbrecht* factors for determining reasonableness. Breedlove's counsel briefly addressed *Crawford's* effect on the application of the *Gisbrecht* factors, primarily in footnotes, noting that the court's analysis must begin with the reasonableness of the fee agreement in the particular case and mentioning the *Gisbrecht* factors only in passing.

The briefing that Breedlove's attorney did offer to support his fee request provides only limited assistance to the court's reasonableness analysis. First, the briefing focuses on a lodestar

approach by constructing a proposed reasonable hourly rate based on general risk factors. Although *Gisbrecht* states, and *Crawford* reinforces, that the court may refer to a lodestar calculation after it conducts its reasonableness assessment, Breedlove's attorney's fee request starts with and turns on a lodestar analysis. This contravenes *Gisbrecht's* and *Crawford's* directives to begin with the fee agreement and then test it for reasonableness by applying the *Gisbrecht* factors to the specific case, ultimately deciding whether a downward adjustment is appropriate.

Second, the risk analysis focuses on the wrong risk factor. *Crawford* directed that the risk factor to be considered is that of taking "the specific case at issue" and not of "the firm's overall success rate" in Social Security cases. The Ninth Circuit also observed that an approach that turns on the firm's overall success rate instead of the specific facts of the case "misconstru[es] the nature of the risk assessment." Breedlove's attorney's analysis takes the very approach to risk analysis that *Crawford* rejected.

In sum, the supporting briefing only partially informs the court's application of the *Gisbrecht* factors to the fee request in this case. These shortfalls do not preclude a reasonableness analysis, however. The briefing submitted to support the fee request, together with the record of the case, contains sufficient information relevant to the *Gisbrecht* factors to enable the court to perform its role here.

2. The character of the representation.

*Gisbrecht* stated that reduction of a twenty-five percent contingency fee is appropriate if the character of the representation is substandard. *Gisbrecht*, 535 U.S. at 808. On this point the Supreme Court cited *Lewis v. Secretary of Health and Human Servs.*, 707 F.2d 246 (6th Cir. 1983), where, because of the poor quality of legal representation, the Sixth Circuit vacated and remanded

a lower court's twenty-five percent attorney fee award. *Id.* at 250-51. In *Lewis*, the substandard representation consisted of counsel's poor preparation for hearings, his failure to meet briefing deadlines, his submission of court documents void of legal citations, and over-billing his client. *Id.* at 248-50. The court also stated that "[r]outine approval of the statutory maximum allowable fee should be avoided in all cases. In a great majority of the cases, perhaps, a reasonable fee will be much less than the statutory maximum." *Id.* at 250.

Breedlove's attorney's representation was not substandard. Rather, it demonstrated competency in and familiarity with the subject matter. This is clearly evidenced by the fact that the Commissioner saw fit to stipulate to a remand of the matter based solely on the initial brief filed by Breedlove's counsel in this matter. Because, under *Gisbrecht*, reduction may be taken only for substandard performance, no reduction is warranted under this factor.

3. The results the representative achieved.

Breedlove's attorney sought a remand for an award of benefits for his client. This court instead ordered remand for further proceedings based on the stipulation of the parties. However, the remand ultimately resulted in an award of benefits for Breedlove.

The circumstances of the case in which the result is achieved are important to the court's assessment of this factor. The inquiry focuses on whether counsel's efforts made a "meaningful and material contribution towards the result achieved." *Lind v. Astrue*, No. SACV 03-01499 AN, 2009 WL 499070, at *4 (C.D. Cal. Feb. 25, 2009). The Commissioner agreed with Breedlove that the ALJ had erred and also agreed that the case should be remanded. Thus, Breedlove's attorney faced a less daunting challenge here than he would have if the Commissioner had vigorously defended the ALJ's decision or argued to uphold the ALJ's decision because the errors could not be reversed under the

controlling standard of review.

While the result achieved here, a remand for additional proceedings which eventually resulted in an award of benefits, is favorable for Breedlove, that outcome cannot be viewed in isolation nor can it be presumed always to require a fee award of the full twenty-five percent. If obtaining benefits always supported awarding fees for the full twenty-five percent, it would make irrelevant the other *Gisbrecht* factors and render perfunctory the trial courts' assigned task of "making reasonableness determinations in a wide variety of contexts[.]" *Gisbrecht*, 535 U.S. at 808. *See also Carlson*, 2010 WL 2813427, at *3 (quoting *Dunnigan*, 2009 WL 6067058, at *12). Nothing in *Gisbrecht* – or *Crawford* – supports such a conclusion; rather, as the Sixth Circuit observed, "[r]outine approval of the statutory maximum allowable fee should be avoided in all cases. In a great majority of the cases, perhaps, a reasonable fee will be much less than the statutory maximum." *Lewis v. Secretary of Health and Human Servs.*, 707 F.2d at 250.[4]

The instant case falls within the *Lewis* court's admonition. The favorable result Breedlove's attorney obtained for his client supports his fee request but does not compel an award of the full twenty-five percent or even the 23.79 percent requested by Breedlove's counsel. The Commissioner eased Breedlove's attorney's task by conceding the ALJ's errors and agreeing to remand. Accordingly, the circumstances here support a reduction from the amount requested by Breedlove's attorney.

4. Attorney responsible for any delay.

It is evident from the record that this factor does not warrant a reduction in the fee

---

[4] *Gisbrecht* cited *Lewis* with approval when explaining the bases for the factors used to determine the reasonableness of a § 406(b) fee request. *See Gisbrecht*, 535 U.S. at 808.

Breedlove's attorney seeks. The Supreme Court stated that a reduction of a requested fee is appropriate under under § 406(b) if the requesting attorney inappropriately caused delay in the proceedings, so that the attorney "will not profit from the accumulation of benefits" while the case is pending. *Gisbrecht*, 535 U.S. at 808 (citing *Rodriquez v. Bowen*, 865 F.2d 739, 746-47 (6th Cir. 1989)). Here, Breedlove's attorney filed a single unopposed motion for an extension of fifty-six days file his opening brief due to a heavy workload, other conflicting deadlines, and a May 12, 2008, back surgery. No evidence in the record suggests that this request was intended, even in part, to delay the proceedings in this case. Accordingly, reduction under this factor is not warranted.

5. Whether the benefits are large in comparison to the time spent on the case.

*Gisbrecht* approved lower courts' use of time records in evaluating whether the disability benefits awarded the claimants were large in comparison to the time spent by counsel on the case. 535 U.S. at 808. Accordingly, the Ninth Circuit in *Crawford* used the plaintiffs' attorneys' submissions of an itemized fee petition and other materials to aid the court's determination of whether the benefits were large in comparison to the time spent in each case.

Breedlove's attorney represented that 23.6 hours of attorney time were spent on this court case. He does not provide the court with any indication of how this compares to the amount of time he regularly invests in the typical Social Security case he handles. He does, however, provide detailed time records of the time both he and another attorney spent on the case. *Gisbrecht* approved lower courts' use of time records in evaluating this factor. 535 U.S. at 808. Accordingly, the Ninth Circuit in *Crawford* used the plaintiffs' attorneys' submissions of an itemized fee petition and other materials to aid the courts' determination of whether the benefits were large in comparison to the time spent on the case.

The time records provided by Breedlove's attorney, Tim Wilborn, indicate that between Octboer 23, 2007, and December 19, 2008, he expended 12.10 hours of time on this case. Breedlove's counsel filed two main documents in this case: the complaint (a three-page document that followed standard format for Social Security complaints in federal court), and an opening brief (twenty pages in length). The record contains the 428-page administrative transcript (on the lighter side of the average range of length), the Commissioner's four-page answer, and the Commissioner's two-page stipulation to remand accompanied by a proposed order and judgment, all of which Breedlove's attorney read, as evidenced by his briefing and time records.

The opening brief counsel submitted on the merits contains a significant amount of standard content for a Social Security plaintiff's brief: a short statement of jurisdiction, the appropriate standard of review, and a description of the sequential five-step process. The opening brief also includes case-specific content: Breedlove's medical history is set forth in a detailed, well organized statement. The arguments by counsel that the ALJ erred by improperly rejecting Breedlove's testimony, lay witness testimony, and physician opinions, and the failure to comply with Social Security Ruling 85-15, wove law and fact with workman-like skill.

The time records offered by Breedlove's counsel indicate that Betsy Stephens expended 11.50 hours in reviewing Breedlove's file and drafting the opening brief over a five-day period. The time records identify Stephens as "Attorney." Breedlove's counsel does not provide any other information about Stephens, such as her year of admission to the Oregon State Bar, how many years she has practiced law, how much time she has spent on Social Security cases, or her regular billable rate. Stephens did not spend any more time on this matter. This 11.5 hours represents nearly half of the 23.6 total hours of attorney time expended on this case. If, as may well be the case, Stephens

is an associate or less experienced attorney utilized by the primary attorney to lessen the hours the primary attorney needed to spend on the matter, the amount of time Stephens expended in preparing the draft of the opening brief would have been greater than that required by the primary attorney, thereby resulting in an increase of the total number of hours required to prepare the opening brief.

Breedlove's primary counsel, Tim Wilborn, who specializes in representing disability claimants and, therefore, does not have an hourly rate but has charged $300 per hour for consulting or expert witness services, expended 3.75 hours finalizing and filing the opening brief. Wilborn spent 2.15 hours reviewing Breedlove's file, assessing the merits of an appeal, corresponding with Breedlove and counsel, and drafting the complaint before this action was filed. Wilborn then spent 3.15 hours reviewing documents filed in the case, including the answer, completing service, and corresponding with Breedlove and other counsel before filing the opening brief. Thereafter, Wilborn spent 2.05 hours reviewing court documents, including the stipulation for remand, and corresponding with Breedlove, counsel, and the Social Security department and one hour preparing his application attorney fees under the EAJA. All of the work on the pleadings filed with the court by both attorneys was completed in an acceptable, workman-like manner.

Review of these filings as well as the transcript and other entries in the record compels the conclusion that this case was unremarkable with regard to the administrative history of Breedlove's Social Security application as well as the medical records relevant to his case. Similarly, the issues involved were common and not complex, and were resolved relatively quickly with a stipulated remand. The number of hours expended by Stephens were likely more than would have been incurred by Wilborn, had he taken the primary role in drafting the opening brief. All of these factors support a reduction from the fee awarded.

6. The risk presented by the case.

*Crawford* clarified that risk is an appropriate factor to consider in determining a § 406(b) award. The opinion also made clear that the individual case must be the focus of the risk analysis: "the district court should look at the complexity and risk involved in the specific case at issue to determining how much risk the firm assuming in taking the case." *Crawford*, 586 U.S. at 1153.

In his supporting briefing, Breedlove's attorney quantifies risk, in part, using the approach that *Crawford* expressly rejected. His analysis centers on the risk of nonpayment and underpayment in contingent cases generally and he devotes much of his discussion to constructing the hourly fee needed in successful cases to compensate him for these risks. However, Breedlove's attorney also notes that this case presented specific high risk factors, such as Breedlove's young age and his subjective complaints of pain.

Turning then to the particular circumstances of this case, the court concludes that neither the factual nor legal issues were particularly complex. The medical record covered a defined period of time and was not necessarily lengthy. The dispute was resolved after the filing of the opening brief with a stipulated remand.

In sum, the record of this case reveals the existence of, at the most, an average administrative and medical record, and no basis to conclude that Breedlove's situation presented unique, unusual, or complex legal issues. Thus, the court finds that the risk associated with this particular case was not particularly high. Such a finding warrants a reduction of the twenty-five percent maximum under this factor.

C. The Fee Award In This Case.

Breedlove's attorney seeks a fee of $24,587.50, an amount he says represents slightly less

than twenty-five percent of a past-due benefits award that his client will receive. Applying the *Gisbrecht* factors and guided by the Ninth Circuit's *Crawford* discussion of those factors, the court has determined that reductions are appropriate under three of the six factors it must consider: the results achieved, the benefits obtained compared to the time spent, and the risk associated with the particular case. Fully explained above, the court's reasons for reducing the fee from the amount requested distill to the average nature of the case's facts and legal issues, the Commissioner's stipulation to a remand after the filing of the opening brief, and the limited amount of time counsel spent on the matter, coupled with a fee request supported by arguments and analysis that do not squarely address the *Gisbrecht* factors and which do not conform to *Crawford's* directives.

In this case, the court concludes that Breedlove's attorney's § 406(b) fee request should be reduced to $16,520.00, approximately two-thirds of the fee requested and nearly sixteen percent of the benefits awarded. This percentage accounts for reduction under the factors discussed above and counsel's failure to support his fee request consistent with *Crawford's* directives, but also accounts for counsel's experience and expertise in this area of law, considerations that mitigate the reduction here. On that latter element, this court agrees with Judge Bea's observation that the courts should avoid fee awards that "punish successful attorneys and reward incompetent attorneys" (*Crawford*, 586 F.3d at 1158 n.4) (Bea, J., dissenting), a result obtained when courts award lower § 406(b) fees to experienced attorneys who spend less time on a Social Security case because they are more experienced and efficient in handling them. The record here supports a fee award that takes into account Breedlove's attorney's experience in this area, which undoubtably contributed to the result he obtained for his client. Applying the reduction to the $24,587.50 requested fee results in a § 406(b) fee award of $16,520.00.

*Crawford* expressly recognized that "[a]s evidence of the reasonableness of the resulting fee," the court may consider as an aid counsel's billing records and lodestar calculations. *Crawford*, 586 F.3d at 1151. A comparison of the § 406(b) fee the court has determined should be awarded here to a lodestar assessment is an appropriate method of gauging the reasonableness of that fee award. As an initial observation, it is Breedlove's attorney's burden to demonstrate the reasonableness of his fee request. In addition to addressing the *Gisbrecht* and *Crawford* factors, he supported the effective hourly rate, $1,041.84, that his proposed fee award would produce, with a series of calculations not based on this specific case. These shortcomings impair counsel's effort to meet that burden, but there is enough information in the record, coupled with counsel's supporting briefing, to aid the court's comparison on this point.

The court's fee award here results in an effective hourly rate of $699.15, a per-hour rate that is nearly three times the $244.00 hourly rate for Portland private-practice attorneys in the "non-contingent" category, which rate Breedlove's attorney offered as the base hourly rate for his calculations. In fact, this effective hourly rate places Breedlove's attorney well above both the average and median of hourly billing rates of Portland attorneys in the "other" category, at approximately the 75th percentile. *See Oregon State Bar 2007 Economic Survey* at 31. Under a traditional lodestar approach, the effective hourly rate resulting from the court's award here is squarely within the reasonable range.

Furthermore, the amount of the fee represents almost sixteen percent of the past-due benefits to be awarded to Breedlove, a percentage comparable to the percentages the *Crawford* court implicitly approved based on significantly more detailed supporting information. *See Crawford*, 586 F.3d at 1145-46, 1151 (observing that the fees sought and approved by the majority were "not

excessively large in relation to the benefits achieved"). Finally, the fee awarded also avoids a "windfall" to Breedlove's attorney, a potential outcome of which courts should be mindful and should strive to avoid. *See Gisbrecht*, 535 U.S. at 808 (quoting *Wells v. Sullivan*, 907 F.2d 367, 372 (2nd Cir. 1990)). In sum, testing the court's fee award against an appropriate hourly rate and lodestar factors confirms that the court's reduction and resulting fee award are reasonable on the record of this case.

*Conclusion*

Plaintiff's Unopposed Motion for Attorney Fees Pursuant to 42 U.S.C. § 406(b) should be GRANTED in part and a § 406(b) fee of $16,520.00 should be awarded to Breedlove's attorney.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **March 30, 2011**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 15th day of March, 2011.

JOHN V. ACOSTA
United States Magistrate Judge