IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TIMOTHY BREEDLOVE,                          3:07-CV-1743-AC

       Plaintiff,                         ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


TIM D. WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045
(503) 632-1120

       Attorneys for Plaintiff

DWIGHT HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158

1  -  ORDER

**DAVID MORADO**
Regional Chief Counsel
**DAVID J. BURDETT**
**BRITANNIA I. HOBBS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2522

        Attorneys for Defendant


**BROWN, Judge.**

        On March 16, 2011, Magistrate Judge John V. Acosta issued
Findings and Recommendation (#25) in which he recommends the
Court grant in part Plaintiff's Unopposed Motion (#22) for
Attorneys Fees pursuant to 42 U.S.C. § 406(b) and award
Plaintiff's counsel $16,520.00 in attorneys' fees.  Plaintiff
filed timely Objections to the Findings and Recommendation.  The
Commissioner did not file a response to Plaintiff's Objections.

        The matter is now before this Court pursuant to 28 U.S.C.
§ 636(b)(1) and Federal Rule of Civil Procedure 72(b).

        When any party objects to any portion of the Magistrate
Judge's Findings and Recommendation, the district court must make
a *de novo* determination of that portion of the Magistrate Judge's
report.  28 U.S.C. § 636(b)(1).  *See also United States v. Reyna-
Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*); *United
States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).

        Plaintiff's counsel specifically objects to the Magistrate

2  -  ORDER

Judge's recommendation to reduce the request for attorneys' fees to an award of $16,520.00 rather than the $24,587.50 requested.

**I.   Standards.**

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under § 406(b), "a court may allow 'a reasonable fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant."  *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Section 406(b) expressly requires any attorneys' fees awarded under that section to be payable "out of, and not in addition to, the amount of [the] past due benefits." 42 U.S.C. § 406(b)(1)(A).  "[A]ny endeavor by the claimant's attorney to gain more than that [statutory] fee, or to charge the claimant a non contingent [*sic*] fee, is a criminal offense." *Id*. at 806-07 (citing 42 U.S.C. § 406(b)(2) and 20 C.F.R. § 404.1740(c)(2)).

In *Gisbrecht* the Supreme Court concluded § 406(b) "does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court."  *Id*. at 807.  Section 406(b), however, requires the court first to "determine whether a fee agreement has been executed between the plaintiff and his attorney, and, if so, whether such agreement is reasonable."

*Garcia v. Astrue,* 500 F. Supp. 2d 1239, 1242 (C.D. Cal. 2007)(citing *Gisbrecht*, 535 U.S. at 807).

"Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits." Even "[w]ithin the 25 percent boundary, [however,] . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered" based on such factors as "the character of the representation and the results the representative achieved." *Gisbrecht*, 535 U.S. at 807-08.

In *Crawford v. Astrue*, the Ninth Circuit noted § 406(b) "'instructs courts to review for reasonableness fees yielded by [contingency fee] agreements.'"  586 F.3d 1142, 1152 (9th Cir. 2008)(quoting *Gisbrecht*, 535 U.S. at 808).  In *Crawford* the Ninth Circuit reinforced the factors set out by the Supreme Court in *Gisbrecht* for district courts to test the reasonableness of the contingent-fee amount:  (1) the character of the representation, (2) the results achieved, (3) any delay attributable to the attorney requesting the fee, (4) whether the benefits of the representation were out of proportion with the time spent on the case, and (5) the risk assumed by counsel in accepting the case. *Crawford*, 586 F.3d at 1151-52.  In any event, courts should begin their analysis with the contingency-fee agreement and assess its reasonableness with deference to the "primacy of lawful attorney-client fee agreements." *Gisbrecht*, 535 U.S. at 793.

4  -  ORDER

## II.  **Analysis**.

As noted, Plaintiff's counsel bears the burden of demonstrating the reasonableness of the attorneys' fees requested under § 406(b).  The Magistrate Judge found Plaintiff's briefing "provide[d] only limited assistance to the Court's reasonableness analysis" because Plaintiff's counsel "focuse[d] on a lodestar approach" rather than addressing all of the *Gisbrecht* factors or discussing the § 406(b) contingency-fee request in light of *Crawford*'s direction to assess the risks of the particular case at issue.  In addition, the Magistrate Judge noted Plaintiff's counsel focused "on the wrong risk factor" and counsel's briefing "only partially informs the Court's application of the *Gisbrecht* factors to the fee request in this case."  Nevertheless, the Magistrate Judge concluded the record was sufficient to complete the necessary analysis of Plaintiff's requested fees.  In addition, the Magistrate Judge concluded no fee reduction was warranted either due to the character of counsel's representation (representation with "workman-like skill"), or because of attorney-caused delay (counsel filed only a single unopposed motion for extension of time).

The Magistrate Judge, however, recommends reducing Plaintiff's request for attorneys' fees to approximately two-thirds of the requested amount of $24,587.50 or to the equivalent of roughly sixteen percent of the $103,350 in past-due benefits

5  -  ORDER

that counsel secured for Plaintiff.  In reaching this conclusion, the Magistrate Judge found "the reductions are appropriate under three of the six factors [the Court] must consider:  the results achieved, the benefits obtained compared to the time spent, and the risk associated with the particular case."

Plaintiff's counsel objects to the Magistrate Judge's Finding and Recommendation to the extent that it recommends a reduction of the amount of attorneys' fees under the contingency-fee agreement.  Counsel specifically contends the Magistrate Judge (1) improperly applied the principles set out in *Gisbrecht* and *Crawford*, which the Magistrate Judge characterized as a "still evolving standard"; (2) improperly rejected counsel's analysis of the reasonableness of his request because it "starts with and turns on a lodestar analysis"; (3) improperly rejected counsel's assessment of the risks of accepting representation of Plaintiff; and (4) failed to properly assess counsel's risk when he concluded the resulting effective hourly rate of $1,041.84 represents an unreasonable fee and a windfall for counsel.

**A.  The § 406(b) Standards under *Gisbrecht* and *Crawford*.**

Plaintiff asserts the Magistrate Judge erred generally by misinterpreting the standards set out by the Supreme Court in *Gisbrecht* and subsequently by the Ninth Circuit in *Crawford*. Plaintiff specifically objects to the Magistrate Judge's characterization of the § 406(b) standards as "evolving" because

the Supreme Court definitively set out the rules by which district courts should assess fee applications under § 406(b) and the Ninth Circuit provides clear guidance for applying *Gisbrecht*.

Plaintiff notes in detail the similarities between the facts in this matter and the facts in *Crawford*.  In *Crawford* the Ninth Circuit (sitting *en banc*) reconsidered a panel decision that consolidated appeals from three district-court orders and in which the original panel upheld the trial courts' reductions of the requested contingency-fee requests by 23%, 47%, and 60%.  586 F.3d at 1144 (overturning *Crawford v. Astrue*, 545 F.3d 854, 859-61, 863 (9th Cir. 2008)).  In the *en banc* decision, Ninth Circuit vacated each district-court order as an abuse of discretion and granted in full each counsel's request in the underlying three cases for fees, which resulted in effective hourly rates for counsel of $659, $892, and $1076.[1]  586 F.3d at 1144-47, 1153.  In each of the underlying cases at issue, the district court concluded counsel's representation was not substandard, that counsel did not overreach or commit fraud in the formation of the contingency agreement, and that counsel did not cause any unnecessary delay in the proceedings.  *Id.* at 1145-46, 1151.  In two of the underlying cases, as in this matter, counsel secured

---

[1] This Court has calculated the effective hourly rates based on the facts of each of the underlying matters.  The Court merely provides these numbers as an example of a range of contingency-fee awards the Ninth Circuit has upheld as reasonable.

stipulated remands for additional proceedings. *See, e.g.*,
*Crawford v. Astrue*, 545 F.3d 854, 859-61, 863 (9th Cir. 2008)(In
one of the underlying cases the Magistrate Judge relied on the
fact that "the Commissioner stipulated to the remand, thereby
sparing plaintiff and his counsel of the need to research and
prepare an exhaustive argument in support of the remand or award
of benefits and . . . counsel did not have to do much work to
persuade the Commissioner to stipulate to a remand.").[2]  The
Ninth Circuit ultimately concluded each district court abused its
discretion by reducing the contingency fees sought by counsel.

   In *Crawford* the Ninth Circuit echoed the Supreme Court's
ruling in *Gisbrecht* as to the proper method for assessing
contingency-fee requests under § 406(b):

> In *Gisbrecht*, the Supreme Court flatly
> rejected our lodestar approach.  The Court
> explained that we had "erroneously read
> § 406(b) to override customary attorney-
> client contingent-fee agreements" when we
> approved the use of the lodestar to determine
> a reasonable fee, *Gisbrecht*, 535 U.S. at
> 808-09, 122 S.Ct. 1817.  The Court held that
> a district court charged with determining a
> reasonable fee award under § 406(b)(1)(A)
> must respect "the primacy of lawful
> attorney-client fee agreements," *id*. at 793,
> 122 S. Ct. 1817, "looking first to the
> contingent-fee agreement, then testing it for
> reasonableness," *id*. at 808, 122 S.Ct. 1817.
> The Court noted that courts that had followed
> this model had "appropriately reduced the

---

   [2] Although this panel decision was ultimately overturned,
the Court cites the overturned opinion only for the facts
surrounding the underlying cases at issue in the *en banc* opinion.

8  -  ORDER

> attorney's recovery based on the character of
> the representation and the results the
> representative achieved." *Id*.  A fee
> resulting from a contingent-fee agreement is
> unreasonable, and thus subject to reduction
> by the court, if the attorney provided
> substandard representation or engaged in
> dilatory conduct in order to increase the
> accrued amount of past-due benefits, or if
> the "benefits are large in comparison to the
> amount of time counsel spent on the case."
> *Id*.

*Id.* at 1148.

The *Crawford* Court emphasized at length the differences between a court's analysis of a request for traditional hourly-rate based attorneys' fees under a fee-shifting statute and a request for fees based on a contingency agreement:

> The Supreme Court made clear in
> *Gisbrecht* why courts must start with the
> contingent-fee agreement in SSDI cases.  The
> Court explained that the lodestar method was
> developed to implement fee-shifting statutes,
> which assess fees against the losing party
> and which do not prevent the attorney from
> seeking additional fees from the client.  *See
> Gisbrecht*, 535 U.S. at 802, 806, 122 S. Ct.
> 1817.  SSDI attorneys' fees, in contrast, are
> not shifted.  They are paid from the award of
> past-due benefits and the amount of the fee,
> up to 25% of past-due benefits, is based on
> the agreement between the attorney and the
> client. . . .  Rather than displace
> contingent-fee agreements, [Congress] meant
> to address a particular problem in their
> implementation.  Attorneys were entering into
> agreements reserving what Congress regarded
> as "exorbitant fees" of one-third to one-half
> of the past-due benefits, often for easy
> cases in which the attorney would
> purposefully cause delay in order to increase
> the accrued benefits and the resulting fees.
> *See id.*  At the same time, Congress was

9  -  ORDER

mindful that fee awards should be sufficient
to encourage adequate representation of
claimants. *See id.* at 806, 122 S. Ct. 1817;
*see also Wells*, 907 F.2d at 370
(contingent-fee agreements "effectuate
[C]ongress's objective of securing adequate
representation for social security
claimants"). Against this backdrop, Congress
enacted § 406(b), which says nothing to
discourage contingent-fee agreements, instead
opting for a 25% cap on fees. *See Gisbrecht*,
535 U.S. at 805, 122 S. Ct. 1817.

As this history demonstrates, Congress
and the Supreme Court have considered the
negative policy implications of allowing the
lodestar methodology to drive SSDI fee
awards. Given the prevalence of lodestar
calculations in the fee-shifting context,
district courts are familiar with the normal
lodestar rules. These include the "strong
presumption" that the lodestar is the
reasonable fee, *see City of Burlington v.
Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638,
120 L. Ed. 2d 449 (1992), and the rule
forbidding contingency enhancements to
compensate for the risk of non-payment in fee
shifting cases. *See id.* at 566-67, 112 S.
Ct. 2638. These rules should not apply where
the fee is paid by the client under the
agreement negotiated between the parties.
The lodestar method under-compensates
attorneys for the risk they assume in
representing SSDI claimants and ordinarily
produces remarkably smaller fees than would
be produced by starting with the contingent-
fee agreement. A district court's use of the
lodestar to determine a reasonable fee thus
ultimately works to the disadvantage of SSDI
claimants who need counsel to recover any
past-due benefits at all.

*Id.* at 1148-49.

The Ninth Circuit, however, also recognized a district

court's discretion to determine the reasonableness of the fee

10 -   ORDER

award and noted that in determining the reasonableness of the
contingent fee, district courts may refer to a lodestar
calculation to ensure a windfall does not occur.  *Id.* at 1152.
Nonetheless, any reduction of fees from the contingency-fee
agreement must be based on a "clear explanation of the reasons
for the fee award."  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S.
424, 437 (1983)).

The Court need not concern itself with Plaintiff's objection
to the Magistrate Judge's comment that the § 406(b) standard is
an "evolving" one, because, in any event, the Magistrate Judge
correctly set out the § 406(b) standards in *Gisbrecht* and
*Crawford*.  The Court, therefore, turns to counsel's objections to
the Magistrate Judge's application of those standards to the
facts of this particular matter.

**B.    Assessment of the Reasonableness of the Contingency-Fee
        Request.**

Plaintiff's counsel objects to the Magistrate Judge's
finding that counsel's analysis in support of the reasonableness
of counsel's contingency-fee request "starts with and turns on a
lodestar analysis."

The Court notes that in counsel's Memorandum (#23) in
support of Plaintiff's Motion for Approval of Attorneys Fees,
counsel begins by pointing out the instruction in *Gisbrecht* and
*Crawford* that courts should begin with the contingency-fee
agreement.  Counsel then discusses at length the decisions in

11 -  ORDER

both cases and the rationale for beginning the analysis with an emphasis on the "primacy of lawful attorney-client fee agreements."  Counsel states he has a contingency agreement with Plaintiff for 25% of the past-due benefits awarded, provides a copy of the contingency-fee agreement, and notes the fee request constitutes 23.79% of Plaintiff's award of past-due benefits. Counsel maintains the contingency-fee agreement was reasonable when signed.

Counsel also cites to the factors set out in *Gisbrecht* and *Crawford* for the Court to consider, including whether the representation was substandard, whether counsel caused any undue delay, whether the fee is large in comparison to the time counsel spent on the case, and the risk assumed by counsel in accepting representation of Plaintiff.  Counsel then proceeds at length to analyze the reasonableness of the fee request in light of the general and specific risks associated with counsel's representation of Plaintiff and in light of other similar contingency-fee awards.  Counsel ultimately maintains he represented Plaintiff with skill as evidenced by the stipulated remand, the $103,350 recovered in past-due benefits, and the future benefits Plaintiff obtained.

Although it is true that Plaintiff's counsel references the average hourly rate of Portland attorneys ($244), it does not appear to the Court that counsel did so for the purpose of

12 -  ORDER

calculating a lodestar-based fee from which to evaluate the contingency fee in this matter. Counsel instead contends the requested contingency fee in this matter is reasonable when considered in light of the facts that counsel only represents Social Security claimants on contingency. According to counsel, any contingency-fee must *necessarily* exceed the average hourly rate by a factor of nearly three to make up for the number of Social Security cases that counsel loses and for which he does not collect any fee for his services. *See Crawford*, 586 F.3d at 1148-50. *See also In re Wash. Pub. Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1299 (9th Cir. 1994)("It is an established practice . . . to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis . . . .").

Counsel also contends in his Memorandum that the effective hourly rate that results from the contingency-fee agreement in this matter ($1,041.84) is not a windfall because it compensates counsel for his lost cases, the significant delays in payment when representing Social Security claimants, and the undercompensation built into the fee structure of the Equal

13 -  ORDER

Access to Justice Act (EAJA). 28 U.S.C. § 2412(d)(2)(A)(mandates only $125 per hour with certain allowances for inflation and locality adjustments). Finally, counsel notes the effective hourly rate requested here is within the range of effective hourly rates approved by a number of district courts in this Circuit and in other Circuits.

With these presentations in mind, the Court concludes counsel's analysis does not merely "start[] with and turn[] on a lodestar analysis," and counsel's analysis is informed by and properly adheres to the standards set out in *Gisbrecht* and *Crawford.*

**C.  The Risks Associated with Representing Plaintiff.**

Plaintiff's counsel objects to the Magistrate Judge's conclusion that counsel did not address correctly the risks associated with accepting representation of Plaintiff in accordance with *Crawford* because counsel assessed only the general risks associated with representing Social Security claimants and did not assess the specific risks of accepting the representation of Plaintiff.

In the Memorandum in Support of the Motion for Attorneys' Fees, Plaintiff's counsel outlines in detail, based on his extensive experience litigating these matters, the risks associated with representing Social Security claimants generally, and counsel includes Plaintiff in that assessment. In

particular, counsel points to the risk of nonpayment in approximately two-thirds of Social Security cases, protracted litigation, long delays between the initiation of representation and payment for the services performed, and the possibility that a remand for further proceedings will be assigned to the same ALJ who denied the claim initially.

In any event, the Court notes counsel does assess the specific risks associated with accepting representation of Plaintiff in this matter:  Plaintiff was still a relatively young claimant at the age of 50; Plaintiff's claim rested primarily on his subjective complaints about the intensity and limiting effects of his pain; counsel accepted representation of Plaintiff without the benefit of a full review of the transcript, which was not available to counsel until it was filed on April 1, 2008; and this case was remanded to the Office of Disability Adjudication and Review, which counsel contends commonly denies benefits to claimants on remand.

The Ninth Circuit addressed in *Crawford* the significant general risks faced by practitioners who represent claimants seeking Social Security benefits, including protracted litigation; multiple remands and appeals; and, at best, a long delay of payment or, at worst, nonpayment.  *Crawfor*d, 586 F.3d at 1149-52.  The Court finds these general risks existed in this matter as set out by Plaintiff's counsel.  Furthermore, the Court

15 -  ORDER

does not find any statement in *Gisbrecht* or *Crawford* to support a conclusion that consideration of the general risks associated with accepting representation of clients for Social Security appeals is inappropriate when assessing the reasonableness of a contingency-fee request.

Although the Magistrate Judge correctly notes the Ninth Circuit held in *Crawford* that counsel must address the *specific* risks of accepting representation of a particular client, the requirement to assess the specific risks of the particular representation does not foreclose consideration of the "general" risks of accepting representation of Social Security claimants. In fact, the Ninth Circuit weighed those "general" risks in its discussion of the reasons for giving primacy to contingency-fee agreements between counsel and Social Security claimants. *Id*.

Because Plaintiff's counsel assessed both the general and specific risks associated with acceptance of representation of Plaintiff, counsel's analysis comports with *Crawford*. On this record, counsel has met his burden to demonstrate that the risks associated with his representation of Plaintiff supports a finding that the contingency-fee agreement is reasonable.

**D.  Fee Request as an Unreasonable Windfall to Counsel.**

Finally, Plaintiff objects to the Magistrate Judge's recommended reduction of his requested fee based on the Magistrate Judge's assessment of the results obtained and his

finding that the requested fee is unreasonable and a windfall for
counsel.

The Magistrate Judge reached his conclusions in this record
based on the "average nature of the case's facts and legal
issues, the Commissioner's stipulation to a remand after the
filing of the opening brief, and the limited amount of time
counsel spent on the matter, coupled with a fee request supported
by arguments and analysis that do not squarely address the
*Gisbrecht* factors and which do not conform to *Crawford's*
directives."

Counsel contends none of these bases supports a reduction of
the requested fee because, even assuming the facts and legal
issues here were "average," counsel could not fully assess those
risks when he undertook representation of Plaintiff because
counsel did not have access to the full transcript until after
filing the case.

In any event, the Court notes that two of the underlying
cases in *Crawford* were remanded by stipulation, but the Ninth
Circuit, nevertheless, vacated the orders to reduce the
contingency fees over the argument of at least one judge that the
stipulated remand justified such a reduction.  Clearly reasonable
judicial minds can differ as to the weight to give to a
stipulated remand when assessing whether to reduce the statutory
contingent fee.

17 -  ORDER

The Magistrate Judge ultimately bases his recommended fee
reduction on a comparison of counsel's effective hourly rate
($1,041.84) to the average hourly rate for Portland, Oregon,
attorneys ($244), concludes counsel's effective rate is too high
when considered in the context of the "average" nature of this
case, and, in turn, concludes a lower effective hourly rate of
$699.15 is reasonable.  In *Crawford*, however, the Ninth Circuit
explained why such comparisons are disfavored as a basis for
assessing the reasonableness of a contingent fee:

> These cases vividly demonstrate the
> deleterious effect of a district court's
> failure to recognize the distinction between
> fee-shifting cases and cases involving
> payment by the claimant from his benefit
> award.  All of the normal lodestar language
> and methodology are accounted for in the
> district court's orders:  reasonable fees,
> reasonable hours, and an "enhancement."
> Lodestar fees will generally be much less
> than contingent fees because the lodestar
> method tends to under-compensate attorneys
> for the risk they undertook in representing
> their clients and does not account for the
> fact that the statute limits attorneys' fees
> to a percentage of past-due benefits and
> allows no recovery from future benefits,
> which may far exceed the past-due benefits
> awarded.  In *Crawford*, for example, the
> district court awarded 6.68% of the past-due
> benefits.  From the lodestar point of view,
> this was a premium of 40% over the lodestar.
> It seems reasonable.  But from the
> contingent-fee point of view, 6.68% of
> past-due benefits was over 73% less than the
> contracted fee and over 60% less than the
> discounted fee the attorney requested.  Had

> the district court started with the
> contingent-fee agreement, ending with a 6.68%
> fee would be a striking reduction from the
> parties' fee agreement.  This difference
> underscores the practical importance of
> starting with the contingent-fee agreement
> and not just viewing it as an enhancement.

586 F.3d at 1150-51.  Because district courts are accustomed to

the lodestar calculation as a basis for determining reasonable

attorneys' fees, a comparison from that perspective of the

average Portland hourly rate[3] of $244 to counsel's effective

hourly rate of $1,041.84 (nearly four times the local average)

could seem unreasonable.  The Court, however, considers this

contingency fee in light of the facts that counsel provided

excellent, skillful representation of Plaintiff without any delay

of these proceedings that resulted in the significant benefits

Plaintiff sought when he retained counsel; counsel only

represents Social Security claimants on a contingency-fee basis;

more often than not counsel does not receive any compensation for

his work; EAJA pays below-average rates; and the Court has

already concluded the time expended by counsel was reasonable

when it awarded EAJA fees to counsel.  In this light, the Court

does not agree in the exercise of its discretion with the

---

[3] This also presumes counsel are "average" among counsel in
Portland, which counsel contends is not an appropriate
presumption because of counsel's nearly 20 years of experience in
representing Social Security claimants.

19 -  ORDER

recommendation to reduce the agreed contingency fee by 33% or more than $8,000.

In *Crawford*, the Ninth Circuit criticized the district courts' conclusions that the awards at issue in the underlying cases represented windfalls to counsel:

> The district court orders quote extensively from *Gisbrecht*. They even cursorily discuss the character of the representation-noting that it was skillful and not dilatory-before concluding that the requested fee would represent a windfall to the attorneys. But this parroting of language from *Gisbrecht* does not mean that the district courts actually applied its teachings. As the orders make clear, the district courts in these cases started with the lodestar calculation and then adjusted upward to account for the contingent nature of the representation. This is contrary to the Supreme Court's clear directive that the district court must first look to the fee agreement and then adjust downward if the attorney provided substandard representation or delayed the case, or if the requested fee would result in a windfall.

*Id.* at 1151. Here the Magistrate Judge finds counsel's requested fee represents a windfall for counsel on the basis of the lodestar comparison in this "average" case and recommends a fee of $16,520, which constitutes a one-third reduction of counsel's requested fee. The Magistrate Judge does not explain the basis for that number except, as noted, to suggest that the resulting "$699.15 . . . per hour rate . . . is nearly three times the

20 - ORDER

$244.00 hourly rate for Portland private-practice attorneys in the 'non-contingent' category . . . [and is] squarely within the reasonable range." While that conclusion is not unreasonable, neither is counsel's persuasive assertion that the proposed reduced fee does not adequately compensate counsel for either the general or specific risks associated with representing Plaintiff in this matter. On this record, the Court concludes there is not a basis to find Plaintiff's requested fee is unreasonable.

Accordingly, because the Court concludes Plaintiff's counsel has met his burden to demonstrate the existence of the 25% contingency-fee agreement and the reasonableness of counsel's request for $24,857.50 pursuant to that agreement in light of the Supreme Court's decision in *Gisbrecht* and the Ninth Circuit's opinion in *Crawford*, the Court finds the time spent and the work performed by Plaintiff's counsel is not out of proportion with the resulting award of benefits to Plaintiff that includes more than $103,000 in past-due benefits in addition to future benefits and that an award of counsel's requested contingency fee does not constitute a windfall.

<u>**CONCLUSION**</u>

For these reasons, the Court **ADOPTS in part** the Findings and Recommendation (#25), **GRANTS** Plaintiff's Unopposed Motion (#22)

for Attorneys Fees pursuant to 42 U.S.C. § 406(b), and **AWARDS**
Plaintiff's counsel **$24,587.50** in attorneys' fees less the EAJA
fees already received in the amount of $4,050.00.

IT IS SO ORDERED.

DATED this 24th day of June, 2011.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

22 - ORDER